UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

WILLIAM STEWART STEELE,

    Petitioner,

v.                                                Case No. 5:03-cv-200-Oc-10GRJ

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

    Respondent.

_____

## ORDER DENYING PETITION

Petitioner, an inmate of the Florida Department of Corrections, initiated this action *pro se* by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and §2241. (Doc. 1). Petitioner is challenging a disciplinary report and conviction for mail violations in which he was sanctioned with thirty days of disciplinary probation and thirty days loss of gain time. The Petition, the Response to the Petition and the administrative record submitted with the Response, Petitioner's Reply, and the other pleadings demonstrate that an evidentiary hearing is not warranted in this case, and the Court may resolve the Petition on the basis of the record.[1]  See Habeas Rule 8(a).

---

[1] After Respondents filed the response to the Petition, Respondents filed a motion to dismiss (Doc. 22), in which Respondents maintain that Petitioner cannot make a valid claim that his sentence was lengthened by the forfeiture of gain time because Petitioner is serving a life sentence. Respondents state Petitioner's gain time is tracked for administrative purposes in the event Petitioner is eligible for executive clemency. Petitioner responded that he can earn gain time so that in the event his life sentence is commuted

## **Status and Procedural History**

On February 22, 2001, Petitioner was charged with a disciplinary infraction of mail violation.[2] The charge stated in part:

> Inmate Steele, William DC# 346856 is being charged with 9-14 mail regulation violation. On 2-22-2001 at approximately 1000 hours while searching the incoming routine mail I discovered a letter being returned from the post office, written by inmate Steele, William in which he is giving someone instructions on how to establish a legal guides business created by him, ad included with rates.

See Appendix, Doc. 2, Ex. B.

Lake Correctional staff conducted an investigation into the charge. On February 28, 2001 Petitioner was notified of the charge and gave a statement that his mother is selling self-help legal guides and generating funds which he has no personal interest.[3] (Appx. C., Doc. 12, pg. 66). Petitioner provided two witnesses, his mother and Officer M. Lopez from Charlotte Correctional Institution. (Appx. C. Doc. 12, pg 67.)

---

to a term of years, the accumulated gain time would be applied to his sentence, citing a prior habeas case in which he was granted habeas relief and awarded with gain time. See Steele v. Moore, 2:97-cv-444-JES (Docs. 33, 65). Assuming Petitioner has established the sanctions had an impact upon his duration of confinement, the Court finds the Petition is due to be denied on the merits.

[2] Rule 33-210.101(7), F.A.C. provided "No inmate may establish or conduct a business through the mail during his period of incarceration."

[3] Specifically, Petitioner's written statement provided:
> As a law clerk at Everglades C.I. during the course of assisting CM and open population prisoners, I created self help guides to enable prisoners to help themselves. After discussing what I had done with family and expressing a desire to help more prisoners in this manner, my children, then mother suggested I sell them. I advised my mother Betty Dunleavy that she would be able to do so by running an ad in the FPLP and she is doing so and I believe generating a business of which I have no personal interest or benefit directly. I request Betty Dunleavy as a witness. 321-779-0293.

(Appx. C, Doc. 12, pg. 67).

The investigating officer interviewed Officer Lopez via telephone.  Officer Lopez's interview is summarized as "I do not know anything about this incident or about legal guides that Steele has." (Appx. C., Doc. 12, pg. 65).  On March 1, 2001, the investigating officer called Petitioner's mother, Ms. Dunleavy, for a telephone interview.  The summary of her statement provided:

> I am trying to start a business using his (Petitioner's) idea for a self help legal guide.  The business only involves me using his idea.  I'm trying to earn money to send his kids to college, I don't want William to get into trouble.

(Appx. C., Doc. 12, pg. 68).

On March 2, 2001, Petitioner's disciplinary hearing was held and Petitioner pled not guilty.  Petitioner declined staff assistance.  Petitioner was found guilty "[b]ased on the contacts of the card which was returned to the mailroom in which the inmate indicates he is starting a legal booklet business."  Petitioner was given thirty days loss of gain time and thirty days of disciplinary confinement.[4] (Appx. C., Doc. 12, pg. 69).

Petitioner filed an administrative grievance to the Superintendent claiming (1) the face of the disciplinary report and facts did not support the charge; (2) Officer Perez's witness statement was denied consideration; and (3) the disciplinary report was written in retaliation of his exercise of free speech. (Appx. A., Doc. 12, pgs. 40-41).  The Superintendent denied Petitioner's appeal, stating in part:

---

[4] It is not clear whether Petitioner served any disciplinary confinement time as a result of the disciplinary infraction.

> Your grievance has been received and carefully reviewed. Investigation reveals that on 2-22-01 you received a disciplinary report for the violation of 9-14, Mail Regulation Violation. Review of the Statement of Facts in Section 1 of the report and attachments finds Ms. Sanchez discovered a letter written by you, being returned from the post office, which indicates you are starting a legal booklet business. Although you were explicit to point out this would be "her" business for "her benefit," it is noted you were financing, arranging and placing ads for this business. Description of the violation is found to support the charge. Statements were obtain from both requested witnesses, which were read and reviewed by the team. Your actions clearly constitute Mail Regulation Violation in that you were starting a business.

(Appx. A., Doc. 12, pg. 40).

Petitioner appealed this denial to the Office of the Secretary, Department of Corrections, which denied Petitioner's appeal. (Appx. A., Doc. 12, pg. 44).

Petitioner then challenged the disciplinary report in the Fifth Judicial Circuit Court in and for Lake County, Florida.[5] In June 2002, the court denied Petitioner's petition for writ of mandamus, finding Petitioner did not suffer an improper denial of constitutionally required due process. The Court also found that Petitioner's retaliation claim was not cognizable in a petition for writ of mandamus. (Appx. D., Doc. 12, pgs. 71-72). Petitioner then filed a petition for writ of certiorari with the Fifth District Court of Appeal. (Appx. E., Doc. 12, pg. 74).

On August 12, 2002, the Fifth District Court of Appeal denied Petitioner's petition for writ of certiorari. (Appx. F., Doc. 12, pg. 103). On June 10, 2003,

---

[5] Petitioner claimed that his rights were violated in that (1) the face of the disciplinary report did not support the charge; (2) the disciplinary hearing team did not present Officer Perez's testimony or Mrs. Dunleavy's faxed statement, the investigating officer failed to write Mrs. Dunleavy's complete statement; and (3) the report was in retaliation for Petitioner's exercise of free speech. (Appx. A, Doc. 12).

4

Petitioner executed the instant Petition for Writ of Habeas Corpus. (Doc. 1). Respondents concede that the Petition was timely filed within the one-year limitation period under 28 U.S.C. § 2244.

## Claims of Petition

Petitioner raises the following grounds for relief in his Petition:

1. He was denied due process of law when the face of the disciplinary report did not support the charge and his conduct was wholly passive and he was unaware of any wrongdoing.

2. He was denied due process of law when the investigation was deficient and there was a withholding of exculpatory evidence from the disciplinary hearing team.[6]

3. His First and Fourteenth Amendment rights were violated when the disciplinary report was initiated in retaliation to deter and punish Petitioner for exercising his rights to free speech.

## Standard of Review

After the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the role of a federal habeas court when reviewing a state prisoner's application

---

[6] Respondents maintain that Petitioner has not properly exhausted his second claim because he did not properly exhaust this claim in his grievance at the prison institutional level. However, the state court considered the alleged violation. The courts of Florida must be given the opportunity to consider the Petitioner's legal theory of a federal constitutional deficiency and the factual basis for that theory. Picard v. Connor, 404 U.S. 270, 277 (1971). Therefore, this Court will address Petitioner's second claim. Medberry v. Crosby, 351 F.3d 1049, 1061 (11th. Cir. 2003)("Section 2254 merely requires that a petitioner exhaust any available state procedures and that, where such procedures are available, the federal courts give a certain amount of deference to the state court determinations.")

pursuant to 28 U.S.C. § 2254 is limited.[7] Specifically, a federal court must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[8] Moreover, each clause, "contrary to" and "unreasonable application," provides a separate basis for review.[9]

Furthermore, under § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[10] The AEDPA also directs that the factual findings of the state court are afforded a presumption of correctness that can only be rebutted by clear and convincing evidence.[11] This presumption of correctness applies to factual determinations made by both the state trial and appellate courts.[12]

---

[7] Williams v. Taylor, 529 U.S. 362, 403-404, 120 S.Ct. 1495, 1518-19 (2000).

[8] See  28 U.S.C. § 2254(d)(1).

[9] Wellington V. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

[10] See also Van Poyck v. Florida Dept. Of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam) ("[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness").

[11]  See § 2254(e)(1).

[12] Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

**Merits of Claims**

Petitioner's two claims of violations of due process is addressed applying the deferential standard for federal court review of state court adjudications. First, it is clear that the state court adjudicated Petitioner's due process claims on the merits, and thus, there is a qualifying state court decision.  Next, the Court must consider the "contrary to" and "unreasonable application" components of the statute.  The Court notes that the state trial court utilized the standards set forth in Wolff v. McDonnell, 418 U.S.539 (1974).  The state court correctly cited the appropriate legal standards.  Thus, the state court's decision did not contradict governing law.  The second inquiry, whether the state court's application of clearly established federal law was objectively reasonable, is also addressed. Upon review of the record, the state court's application of the clearly established law regarding the requirements of due process being satisfied in Petitioner's disciplinary proceeding was objectively reasonable.

Familiar notions of fair notice apply in the prison disciplinary context: "'Because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'"[13] However, "[b]ecause 'legalistic wrangling' over the meaning of prison rules 'may visibly undermine the [prison] administration's position of total authority,' federal

---

[13] Adams v. Gunnell, 729 F.2d 362, 368-69 (5th Cir. 1984) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)).

7

courts have deferred to the interpretation of those rules by prison authorities 'unless fair notice was clearly lacking.'"[14]

Prison disciplinary proceedings are not part of a criminal prosecution, therefore, the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings.[15] However, inmates are entitled to some due process protections.[16] Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder.[17]

The Court finds that Petitioner has not demonstrated that the state court's adjudication of these claims resulted in a decision that is contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented. Upon review of the record, the Court finds that Petitioner received the degree of fairness in the disciplinary proceeding to which he was entitled. The disciplinary fact finder relied on "some" evidence and cited aspects of the evidence relied upon to convict Petitioner of the charge.

---

[14] Id. at 369 (quoting Hadden v. Howard, 713 F.2d 1003, 1008 (3d Cir. 1983)).

[15] Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975 (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution").

[16] Id.

[17] Superintendent Mass. Corr. Inst. v. Hill, 472 U.S. 445, 447 (1985).

Finally, to the extent Petitioner claims the disciplinary report was initiated in retaliation of Petitioner exercising his rights to free speech, this claim is without merit. The state trial court found Petitioner's retaliation claim not cognizable in a petition for writ of mandamus. This claim was considered by this Court in case no. 5: 03-cv-91-Oc-10GRJ, in which this Court granted summary judgment in favor of defendants. As to Petitioner's disciplinary report that is challenged in the instant habeas petition, this Court found "[t]here is no admissible evidence to suggest that Sanchez issued the report because of any retaliatory motive....Sanchez issued the report based on a review of the correspondence and her conclusion that the Plaintiff was attempting to conduct a business through the mail." (case no. 5: 03-cv-91-Oc-10GRJ, Doc. 136, pg. 7-8).

## Conclusion

For the reasons set forth in this Order, the Petition is **DENIED with prejudice**. The Clerk is directed to enter judgment denying the Petition with prejudice, terminate any pending motions, and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 8th day of August 2006.

UNITED STATES DISTRICT JUDGE

c: William Stewart Steele
   Counsel of Record